[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12869
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20876-CMA-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO ARJONA GOMEZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 20, 2021)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Julio Arjona Gomez appeals the district court's order denying his motion for compassionate release under the First Step Act.  We affirm.

Arjona moved for compassionate release because of the coronavirus pandemic. He argued that there were "extraordinary and compelling reasons" for his release because his medical conditions, including heart disease and hypertension, put him at an increased risk for complications if he contracted the coronavirus. Arjona also argued that he was not a danger to the community, did not have a history of violence, and that his release would "still reflect the seriousness of his offense" and satisfy the section 3553(a) factors. The government responded that the district court should deny Arjona's compassionate release motion because there was a greater danger of him catching the coronavirus if released, his medical conditions were not extraordinary and compelling, and he was still a danger to the community.

The district court denied Arjona's compassionate release motion because (1) his medical condition was not extraordinary and compelling and (2) after considering the section 3553(a) factors he should not be released seven years early. The district court found that the Bureau of Prisons's plan to stop the transmission of the coronavirus mitigated the risks to Arjona's health and the section 3553(a) factors "hardly compel[led] a downward variance of what amounts to nearly [eighty-four] months."

We review the district court's denial of a compassionate release request for abuse of discretion. United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). A district court abuses its discretion where it commits a clear error of judgment,

2

"applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Id. at 911–12 (citations omitted).  Abuse of discretion review "means that the district court had a 'range of choice' and that we cannot reverse just because we might have come to a different conclusion had it been our call to make." Id. at 912.

On appeal, Arjona argues that the district court abused its discretion by finding that the risks to his health were not an extraordinary and compelling reason for compassionate release and in analyzing the section 3553(a) factors.[1]  Generally, "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  However, compassionate release is an exception where the court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that" the reduction is consistent with applicable policy statements by the Sentencing Commission and "extraordinary and compelling reasons warrant such a reduction."   18 U.S.C. § 3582(c)(1)(A).  See also Harris, 989 F.3d at 909.

We assume that Arjona's health was an extraordinary and compelling reason for compassionate release.  Still, the district court did not abuse its discretion by

---

[1] Arjona also argues that the district court erred because it failed to consider sections 3142(i) and 3145(c) and the fact that his "prison age" is considered geriatric.  But sections 3142(i) and 3145(c) do not apply to compassionate release.  Section 3142(i) applies to pretrial release orders and section 3145(c) applies to release pending sentencing or appeal.  As for his prison age, for purposes of this appeal, we assume that Arjona's medical conditions are extraordinary and compelling reasons for compassionate release.

denying Arjona's motion after considering the section 3553(a) factors.  The district

court denied Arjona's motion because:

> Consideration of the section 3553(a) factors hardly compels a downward variance of what amounts to nearly 84 months given: Defendant's history and characteristics; the nature and circumstances of his offenses are serious, took place over an extended period of time, and resulted in significant losses; Defendant's sentence should promote respect for the law and provide just punishment for the offenses committed; the sentence should afford adequate deterrence, especially here where Defendant's conduct follows similar criminal behavior from which he was clearly not rehabilitated; and the public needs protection from further crimes of the Defendant.  *See* 18 U.S.C. § 3553(a). Granting Defendant compassionate relief . . . would undermine those goals.

As to Arjona's history and characteristics, this was his third conviction for an

identity theft related crime.  In 2001, Arjona was sentenced to time served for theft

and possession of a stolen credit card and an unauthorized driver's license after he

attempted to make a fraudulent purchase.  And, in 2002, Arjona had a card

manufacturing facility in Miami Lakes and told an undercover agent that he could

make counterfeit cards and identification if the agent skimmed the accounts.  He was

found guilty and served thirty-seven months' imprisonment for conspiracy to

produce, possess, and traffic in counterfeit access devices and to possess device-

making equipment, possession of device-making equipment, and conspiracy to

produce, possess, and use false identification documents.

As to the nature and circumstances of this most recent identity theft

conviction, Arjona's fraud scheme was extensive and serious.  Even after his prison

sentence, Arjona again operated a counterfeit credit card manufacturing facility, now in Hialeah, Florida.  For a year, he received orders for counterfeit credit cards and trafficked thousands of stolen credit card account numbers.  In his facility, there were "thousands of counterfeit credit cards, over 50,000 black credit card plastics, several credit card printers, a magnetic strip encoder, modified gasoline pump skimmer devices, computers, and electronic media storage devices" which contained "over [fifty] stolen credit card numbers."   Arjona also conducted hand-to-hand transactions, providing counterfeit credit cards to co-conspirators in exchange for payment.  Arjona was responsible for $1,944,000 in losses.

The district court concluded that only serving twenty-six months of his 137-month sentence would not be a just punishment for his criminal conduct, would not deter Arjona from future crimes, and would not protect the public from his fraudulent schemes.  Having reviewed the record, we cannot say that the district court's conclusion was an abuse of discretion.

**AFFIRMED.**